IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LAUREN BILLITER,

    Plaintiff,

v.           CIVIL ACTION NO. 3:19-0288

ELIZABETH JONES,
Circuit Clerk, Mason County and
THE MASON COUNTY COMMISSION,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are Defendant Mason County Commission's Motion to Dismiss and Defendant Elizabeth Jones's Motion for Partial Dismissal, ECF No. 8. For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motions.

**I. BACKGROUND**

Plaintiff Lauren Billiter alleges the following facts. Billiter began working in 2013 as a deputy circuit clerk in Mason County, West Virginia. ECF No. 1 ¶¶ 2–3. Deputy circuit clerks are co-employed by the circuit clerk and the Mason County Commission. *Id.* ¶ 19. In June 2017, Vera Caldwell, who is Billiter's mother and a Democrat, became the circuit clerk of Mason County. *Id.* ¶¶ 7, 13. In November 2018, Defendant Lauren Jones, a Republican, replaced Caldwell as circuit clerk. *Id.* ¶ 8. Soon after being sworn in, Jones handed Billiter a letter of termination and said, "[t]his is for your mother." *Id.* ¶¶ 11, 16. The defendants then hired three new deputy clerks, all of whom are registered Republicans. *Id.* ¶¶ 17–18.

Billiter challenges her termination with claims under the West Virginia Human Rights Act, article III, sections 7, 10, 11, and 16 of the West Virginia Constitution, and the First and Fourteenth Amendments to the United States Constitution per 42 U.S.C. § 1983. *Id.* ¶ 33. The defendants move to dismiss on three grounds. ECF No. 8. First, the defendants argue Billiter failed to allege an unconstitutional policy or custom to hold the County Commission liable under § 1983. ECF No. 9, at 3–9. Second, the defendants argue Billiter failed to state a claim under the West Virginia Constitution because the County Commission could not be considered the proximate cause of Billiter's termination. *Id.* at 9–11. Third, the defendants argue Billiter's claims under the West Virginia Human Rights Act fail because she is not a member of a protected class. *Id.* at 11–14.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." FED. R. CIV. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.*

## III. DISCUSSION

### A. The complaint fails to state a claim against the County Commission under § 1983.

The defendants first argue that Billiter insufficiently alleges the County Commission is liable under 42 U.S.C. § 1983. ECF No. 9, at 3–9. Under *Monell v. Department of Social Services*,

courts may hold a local government entity liable for its officers' actions under § 1983 only if the entity itself caused the deprivation of the plaintiff's rights. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. 658, 692 (1978)). A plaintiff can prevail if she suffered a deprivation of her federal rights and the execution of the government's "policy or custom" inflicted the injury. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). A local government entity can develop a policy or custom in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Id*. (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

The first, third, and fourth theories are inapplicable here. Billiter does not allege the existence of an express policy, so the first theory does not apply. The third theory is also inapplicable because Billiter does not allege that a decision by the County Commission reflects deliberate indifference to the risk that allegedly unlawful terminations like Billiter's would follow. *See Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997)). Lastly, the complaint does not implicate the fourth theory because Billiter does not allege multiple incidents of unlawful conduct. *See Nichols v. Cty. Comm'n of Cabell Cty.*, No. 3:18-0266, 2018 WL 4016311, at *5 (S.D. W. Va. Aug. 22, 2018) (holding plaintiff sufficiently alleged other instances of unconstitutional conduct for his *Monell* claim against the County Commission to proceed).

The Court thus analyzes Billiter's allegations that the Commission permitted or authorized her termination under the second theory. ECF No. 1 ¶ 24. The Commission's liability depends on who had authority to terminate Billiter, and the Court turns to state law for this determination. *See Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 196 (4th Cir. 1994) (citation omitted). Under West

Virginia Code section 7-7-7(h), each circuit clerk has "the authority to discharge any of his or her assistants, deputies or employees by filing with the clerk of the county commission a discharge statement specifying the discharge action . . . ." The Commission argues this subsection grants the circuit clerk sole authority to terminate deputies, so the Commission cannot be liable for the termination. ECF No. 9, at 7. However, the Court rejected this argument in *Nichols v. County Commission of Cabell County.* 2018 WL 4016311, at *6–7. Section 7-7-7(h) gives circuit clerks the statutory authority to terminate their deputies. But, as co-employer, the Commission also holds the power of termination. *Id.* at *7 (citing *Burke v. Wetzel Cty. Comm'n*, 815 S.E.2d 520 (W.Va. 2018)).

Because both parties had the power to terminate Billiter, she must sufficiently allege the Commission exercised its own authority through or with Jones in the termination. *See Nichols*, 2018 WL 4016311, at *6 (holding the court could reasonably infer the county administrator, the county clerk, the county commission, or all of them together terminated the plaintiff). The only relevant allegation in the complaint is paragraph twenty-four: "[u]pon information and belief, the Defendant Mason County Commission permitted and/or authorized Defendant Jones to take adverse employment action against the Plaintiff and, as a result, such action constitutes the official policy, custom and practice of the County Commission." ECF No. 1 ¶ 24. Billiter argues this allegation is enough, citing the Supreme Court of Appeals of West Virginia's decision in *Burke v. Wetzel County Commission*. ECF No. 11, at 5–6; 815 S.E.2d 520. While the court in *Burke* did hold a similar allegation could survive a motion to dismiss, the West Virginia Rules of Civil Procedure follow the more liberal standard of notice pleading. 815 S.E.2d at 530; *Roth v. DeFeliceCare, Inc.*, 700 S.E.2d 183, 189 n.4 (W.Va. 2010). The federal rules set a higher standard that requires "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face'" and that disregards "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 677, 678 (citations omitted). Billiter's sole conclusory statement that the Commission "permitted and/or authorized" Jones to terminate Billiter does not meet this standard. The Court therefore dismisses Billiter's § 1983 claims against the County Commission.

### B. The complaint fails to state a claim against the County Commission under Article III of the West Virginia Constitution.

The defendants also argue Billiter's state constitutional claims against the Commission fail because the complaint insufficiently alleges the Commission caused Billiter's termination. ECF No. 9, at 10–11. When permitted, private causes of action for violations of the West Virginia Constitution are analogous to § 1983 claims. *See Hutchison v. City of Huntington*, 479 S.E.2d 649, 654 (W.Va. 1996) (analogizing a claim under article 3, section 10 of the state constitution to § 1983); *Barcus v. Austin*, No. 1:17CV122, 2018 WL 4183213, at *5 (N.D.W. Va. Aug. 31, 2018) (applying § 1983's causation standard to state constitutional claims). Thus, a plaintiff must allege a constitutional violation occurred and the local government entity caused the violation. *See Kane v. Lewis*, 604 F. App'x 229, 234 (4th Cir. 2015) ("[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries *caused by* the deprivation of constitutional rights. A plaintiff asserting a constitutional tort under § 1983 must therefore satisfy the familiar element of proximate causation.") (internal quotation marks and citations omitted).

Billiter's state constitutional claims against the Commission are therefore insufficient for the same reason her § 1983 claims against the Commission are insufficient. Billiter does not adequately allege the Commission caused her termination. As previously discussed, Billiter's only relevant allegation is that the Commission "permitted and/or authorized" Jones to terminate Billiter, but this sole conclusory statement does not meet the standard of plausibility. *See Iqbal*,

556 U.S. at 677, 678 (citations omitted). The complaint alleges no other facts connecting the Commission to Billiter's termination, and the Court finds no supporting inferences to draw. The Court therefore dismisses Billiter's state constitutional claims against the Commission.

## C. The complaint fails to state a claim against Jones under Article III, Section 10 of the West Virginia Constitution and the Fourteenth Amendment of the U.S. Constitution.

The defendants argue Billiter's complaint lacks factual allegations for a violation of article III, section 10 of the West Virginia Constitution. ECF No. 9, at 9. Billiter offered no response. Section 10 states "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." Because section 10 is the state constitution's analogue to the Fourteenth Amendment's Due Process Clause, the Court considers them together.

Under the due process analysis, the Court first determines whether there exists a liberty or property interest of which a person has been deprived. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citation omitted). The Supreme Court has held that government employment can be a property interest, but the employee "must have more than a unilateral expectation of it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *see also Kessel v. Monongalia Cnty. Gen. Hosp. Co.*, 600 S.E.2d 321, 327–28 (W.Va. 2004) (holding a property interest "must be more than a unilateral expectation of continued employment") (citation omitted). Instead, "a person must possess a legitimate claim of entitlement to it—created, for example, by contract or state law." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 307 n.14 (4th Cir. 2006) (citing *Roth*, 408 U.S. at 577–78). If a protected interest exists, the Court then asks "whether the procedures followed by the State were constitutionally sufficient." *Swarthout*, 562 U.S. at 219.

The complaint fails to state a claim under this standard. First, Billiter does not allege any "legitimate claim of entitlement" to continued employment with the circuit clerk. *Ridpath*, 447 F.3d at 307 n.14. She alleges no contracts, statutory provisions, or implied promises from which

-6-

the Court could infer her employment was something other than at-will. *See Bishop v. Wood*, 426 U.S. 341, 344–46 (1976) (holding city police officer employed at-will did not have a property interest in his job); *Hope v. Bd. of Dirs. of Kanawha Pub. Serv. Dist.*, No. 2:12-CV-6559, 2013 WL 3340699, at *4–6 (S.D.W. Va. July 2, 2013) (dismissing plaintiff's section 10 and Fourteenth Amendment claims for lack of property interest in her employment); *Taylor v. Ohio Cty. Comm'n*, No. 5:17-CV-148, 2017 WL 5761610, at *5–7 (N.D.W. Va. Nov. 28, 2017) (dismissing plaintiff's Fourteenth Amendment claim for lack of property interest in her employment). Thus, Billiter only pleaded a "unilateral expectation" of her employment. *Roth*, 408 U.S. at 577. Second, Billiter does not allege any procedural deficiency in her termination, such as the denial of a hearing. *See Hope*, 2013 WL 3340699, at *5 (dismissing due process claim for, among other reasons, failure to allege denial of a hearing). The Court therefore finds the complaint lacks allegations to support due process claims under the West Virginia Constitution and the Fourteenth Amendment and dismisses these claims.

### D. The complaint fails to state a claim against Jones under Article III, Section 11 of the West Virginia Constitution.

The defendants argue Billiter's complaint lacks factual allegations for a violation of article III, section 11 of the West Virginia Constitution. ECF No. 9, at 9. Billiter did not respond to explain her theory for the claim. Section 11 provides:

> Political tests, requiring persons, as a prerequisite to the enjoyment of their civil and political rights, to purge themselves by their own oaths, of past alleged offences, are repugnant to the principles of free government, and are cruel and oppressive. No religious or political test oath shall be required as a prerequisite or qualification to vote, serve as a juror, sue, plead, appeal, or pursue any profession or employment. Nor shall any person be deprived by law, of any right, or privilege, because of any act done prior to the passage of such law.

Ratified in 1872 with the rest of the state's constitution, the drafters designed section 11 to prohibit legislation that penalized supporters of the Confederacy. *Haddad v. Caryl*, 390 S.E.2d 210, 214

(W.Va. 1990). An example of such legislation is an 1866 law requiring attorneys to swear they had not taken up arms against the United States or otherwise supported the Confederacy during the Civil War. *Id.* at 214, n.2 (citing *Ex parte Hunter*, 2 W.Va. 122 (1867)).

Section 11 precedent is sparse, for explicit political and religious tests are rare. One old example is *Prichard v. De Van*, in which the Supreme Court of Appeals declared unconstitutional a section of a statute requiring members of a fire department to be from one of the "two great political parties." 172 S.E. 711, 712 (W.Va. 1934). Billiter presumably invokes section 11 to argue Jones's termination of Billiter, a Democrat, and hiring of three Republican deputy circuit clerks evidences a political test of Republican affiliation to work for Jones. *See* ECF No. 1 ¶ 12, 17–18. However, section 11's history and text, as well as precedent like *Prichard*, indicate section 11 is directed at formal, overt tests established in statutes, regulations, oath requirements, and the like. Claims of unlawful decision-making by an individual based on political belief and affiliation belong under sections 7 and 16. Because Billiter alleges biased decision-making by Jones and not a formal test, the Court dismisses her section 11 claim.

   E. **The complaint states a claim against Jones under Article III, Sections 7 and 16 of the West Virginia Constitution and the First Amendment of the U.S. Constitution.**

The defendants claim Billiter's complaint lacks factual allegations for violations of article III, sections 7 and 16 of the West Virginia Constitution. ECF No. 9, at 9. Section 7 incorporates the First Amendment right to freedom of speech, and section 16 incorporates the First Amendment right to freedom of assembly.[1] Terminating a public employee for political reasons implicates both rights. *Elrod v. Burns*, 427 U.S. 347, 369–70 (1976) (stating "patronage is a very effective

---

[1] The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble . . . ." Section 7 states that "[n]o law abridging the freedom of speech, or of the press, shall be passed," and section 16 states that "[t]he right of the people to assemble in a peaceable manner . . . shall be held inviolate."

impediment to the associational and speech freedoms which are essential to a meaningful system of democratic government"). Because sections 7 and 16 mirror the First Amendment, courts apply First Amendment law to state constitutional claims challenging politically-motivated terminations. *See Adkins v. Miller*, 421 S.E.2d 682 (W.Va. 1992). Thus, the same standard applies to Billiter's section 7, 16, and First Amendment claims for unlawful termination, and the Court considers them in tandem.

In *Elrod v. Burns* and *Branti v. Finkel*, the Supreme Court held the First Amendment generally forbids terminating public employees based on their political beliefs or affiliations. 427 U.S. 347 (1976); 445 U.S. 507 (1980). However, the narrow "Elrod-Branti" exception permits patronage dismissals for public employees in policymaking positions "to give effect to the democratic process." *Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239, 248 (4th Cir. 2016) (citation omitted). The Fourth Circuit applies a two-part test. *Id.* First, the Court asks "at a general level, whether the employee's position requires 'government decisionmaking on issues where there is room for political disagreement on goals or their implementation.'" *Id*. (citation omitted). If so, the Court must then "look at the employee's specific responsibilities, and 'focus on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." *Id*. (citation omitted).

Here, Billiter pleads enough facts to allege Jones terminated her for unlawful political reasons. Billiter claims Jones explicitly told Billiter that Billiter's association with her mother, Jones's political rival, was the reason for her termination. ECF No. 1 ¶ 16. The allegation that Jones terminated Billiter on the first business day after being sworn in also supports Billiter's claim that the termination was motivated by politics, not conduct. *Id.* ¶ 11. And, Jones's alleged hiring of three new deputy clerks, all Republicans, supports Billiter's claim that Jones terminated her for

her affiliation with the Democratic Party and support for her mother's run as a Democratic candidate. *Id.* ¶¶ 17–18; *see Adkins*, 421 S.E.2d at 683–84 (holding trial court erred by dismissing complaint against sheriff who allegedly fired previous sheriff's employees and hired his "own people" to ensure loyalty). The Court also finds no indication in the complaint that Billiter's position as deputy circuit clerk involved politically-driven decision-making that would justify Billiter's termination under the Elrod-Branti exception. *See Lawson*, 828 F.3d at 247–49 (holding Elrod-Branti exception did not apply to deputy clerk of court). The Court therefore denies the defendants' motions as to Billiter's claims under article III, sections 7 and 16 of the West Virginia Constitution and the First Amendment.

### F. Money damages are not available for Billiter's claims against Jones under Article III, Sections 7 and 16 of the West Virginia Constitution.

While Billiter's section 7 and 16 claims against Jones survive the defendants' motions to dismiss, money damages are not available. The state constitution does not explicitly permit money damages, West Virginia lacks a state analogue to § 1983 providing for the remedy, and the Supreme Court of Appeals has not directly addressed the issue. Thus, courts in this district have generally held money damages are not available for violations of article III rights. *S.M.B. v. W. Virginia Reg'l Jail*, No. 3:17-1300, 2017 WL 3841894, at *4–5 (S.D.W. Va. Sept. 1, 2017) (Chambers, J.); *Howard v. Ballard*, No. 2:13-CV-11006, 2015 WL 1481836, at *4 (S.D.W. Va. Mar. 31, 2015) (Johnston, J.); *McMillion-Tolliver v. Kowalski*, No. 2:13-cv-29533, 2014 WL 1329790, at *2 (S.D.W. Va. Apr. 1, 2014) (Goodwin, J.); *Smoot v. Green*, No. 2:13-cv-10148, 2013 WL 5918753, at *4 (S.D. W. Va. Nov. 1, 2013) (Copenhaver, J.); *but see Spry v. W. Virginia*, No. 2:16-CV-01785, 2017 WL 440733, at *9 (S.D.W. Va. Feb. 1, 2017) (Johnston, J.) (suspecting the Supreme Court of Appeals would recognize a cause of action for money damages and declaring an intent to certify the question). The Supreme Court of Appeals did, however, authorize injunctive

relief in *Harrah v. Leverette* for an article III, section 5 claim. Syl. Pt. 4, 271 S.E.2d 322 (W.Va. 1980). Based on *Harrah*, the Court allows Billiter to proceed under sections 7 and 16 for injunctive relief only, including reinstatement. *See S.M.B.*, 2017 WL 3841894, at *5 ("In light of *Harrah*, which explicitly sanctions injunctive relief, the more sound assumption is that a private cause of action may be brought for seeking equitable relief to remedy constitutional violations but not money damages.").

### G. The complaint does not state a claim for familial status discrimination under the West Virginia Human Rights Act, but does state a claim for ancestry discrimination.

Lastly, the defendants argue Billiter fails to state a claim for familial status and ancestry discrimination under the West Virginia Human Rights Act because Billiter is not a member of a protected class. ECF No. 9, at 12–14; ECF No. 12, at 6–8. Billiter does not defend her ancestry claim but argues for a liberal interpretation of "familial status" that would prohibit Jones from terminating Billiter for Billiter's relationship to her mother. ECF No. 11, at 10–11. The Human Rights Act provides:

> Equal opportunity in the areas of employment and public accommodations is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, age, blindness or disability. Equal opportunity in housing accommodations or real property is hereby declared to be a human right or civil right of all persons without regard to race, religion, color, national origin, ancestry, sex, blindness, disability or familial status.
>
> The denial of these rights to properly qualified persons by reason of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society.

W. Va. Code § 5-11-2.

As the defendants argue, Billiter has no claim for familial status discrimination because the Human Rights Act does not prohibit employment discrimination based on familial status. ECF No. 12, at 6–8. Section 5-11-2 lists familial status in regards to housing accommodations and real

property, but not employment. The section's last sentence lists all of the protected classes under employment and housing together, but it does not eliminate the section's prior distinction between employment and housing. The Act's prohibition of familial status discrimination in housing but not employment is not surprising given that federal law similarly prohibits familial status discrimination in the Fair Housing Act, but not Title VII. *See* 42 U.S.C. § 3604; 42 U.S.C. § 2000e-2(a).

Billiter's claim for ancestry discrimination is not so clear, for the Court lacks a guiding definition of "ancestry." Generally, courts should construe the Human Rights Act in accordance with Title VII. *Henegar v. Sears, Roebuck & Co.*, 965 F. Supp. 833, 836 (N.D.W. Va. 1997) (citation omitted). However, Title VII does not expressly prohibit ancestry discrimination. *See* 42 U.S.C. § 2000e-2(a). An earlier version of Title VII did include ancestry, but the drafters deleted it from the final version. *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 89 (1973) (citing H.R. 7152, 88th Cong., 1st Sess., § 804, Oct. 2, 1963 (Comm. print)). The Supreme Court has explained this deletion likely occurred because the drafters considered "national origin" and "ancestry" to be synonymous. *Id.*

West Virginia deviated from Title VII by including ancestry as a separate category of prohibited discrimination in the Human Rights Act. W. Va. Code § 5-11-2. However, ancestry is not defined in the Act or by precedent. One could argue ancestry is inextricably linked to issues of race, ethnicity, or national origin, as precedent often implies. *See, e.g.*, *Fairmont Specialty Servs. v. W. Va. Human Rights Comm'n*, 522 S.E.2d 180, 183 (W.Va. 1999) (finding in favor of employee who claimed a hostile work environment based on her Mexican ancestry). For instance, Justice William J. Brennan once defined ancestry as "the ethnic group from which an individual and his

or her ancestors are descended." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J., concurring).

However, the plain definition of ancestry is much broader. Black's Law Dictionary defines ancestry as "[a] line of descent; collectively, a person's forebears; lineage." *Ancestry*, BLACK'S LAW DICTIONARY (11th ed. 2019). The Merriam-Webster Unabridged Dictionary's definition includes "persons initiating or comprising a line of descent." *Ancestry*, MERRIAM-WEBSTER UNABRIDGED, http://unabridged.merriam-webster.com/unabridged/ancestry (last visited Jan. 6, 2020). Here, Billiter alleges Jones explicitly terminated her because of her lineage—for being her mother's daughter. ECF No. 1 ¶ 16. Whether the definition of ancestry under the Human Rights Act is broad enough to cover this claim is a substantive legal dispute the Court cannot dispose of at this stage. The Court therefore denies the defendants' motions as to Billiter's claim of ancestry discrimination but grants the motions as to Billiter's familial status discrimination claim.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Mason County Commission's Motion to Dismiss and Defendant Elizabeth Jones's Motion for Partial Dismissal, ECF No. 8. In sum, the Court dismisses: Billiter's claims against the County Commission under § 1983 and article III of the West Virginia Constitution; Billiter's claims against Jones under article III, sections 10 and 11 of the West Virginia Constitution; Billiter's Fourteenth Amendment claim against Jones; and Billiter's familial status discrimination claim under the West Virginia Human Rights Act. Billiter may proceed under: article III, sections 7 and 16 of the West Virginia Constitution against Jones and for injunctive relief; the First Amendment per § 1983 against Jones; and the West Virginia Human Rights Act for ancestry discrimination against the County Commission and Jones.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:       January 9, 2020

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE